UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JORGE MORENO VILLEGAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-CV-4266-B |
| | § | |
| UNITED STATES CUSTOMS AND | § | |
| BORDER PROTECTION OFFICER | § | |
| MARIO UNATE and THE UNITED | § | |
| STATES OF AMERICA, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Partially Dismiss for Failure to State a Claim and Transfer Venue (doc. 8) filed by the Defendants. As follows, the Court **DENIES** Defendants' Motion.[1]

## I.

## THE RULE 12(b)(6) MOTION

Plaintiff Jorge Moreno Villegas ("Moreno") brought this action "to redress an objectively unreasonable and unlawful seizure and arrest of [his person] and offensive acts taken in connection therewith" allegedly committed by U.S. Customs and Border Protection Officer Mario Unate ("Unate") in his capacity as an agent/employee of the United States of America (together, "Defendants"). Doc. 1, Compl. ¶ 1. In brief, Morena alleges that on December 12, 2012 Unate stopped his vehicle in or around Ozona, Texas, "about sixty miles from the nearest point along the

---

[1] Also discussed below, the Court **GRANTS** the Motion to Waive Local Counsel Requirement (doc. 5) filed by counsel for the Plaintiff.

-1-

U.S./Mexico border," without reasonable suspicion and solely on the basis of his Hispanic ethnicity in an act of "unlawful racial profiling." *Id.* ¶¶ 4, 15-17. Following this purportedly "unlawful seizure," Unate questioned Moreno about his citizenship and immigration status in English, to which Moreno "declined to respond." *Id.* ¶¶ 70-72. Then Unate repeated his questioning in Spanish, after which he ordered Moreno out of the vehicle, handcuffed him, "and placed him in the rear seat of his immigration vehicle." *Id.* ¶¶ 73-76.

Ultimately, Moreno claims this incident caused him to be "unlawfully seized, assaulted, detained, mentally and emotionally distressed, physically abused and humiliated." *Id.* ¶ 88. Consequentially, he filed a Complaint against the Defendants on December 3, 2014 (doc. 1), asserting a *Bivens* claim against Unate, and two Federal Tort Claims Act ("FTCA") claims against the United States. *See id.* ¶¶ 99-107.

On February 12, 2015, Defendants responded to Moreno's Complaint by filing a Motion to Dismiss (doc. 8) pursuant to Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Their Motion seeks to dismiss just one of Moreno's three claims, specifically, Moreno's FTCA "claim for false imprisonment due to the detention and arrest of [Moreno] as alleged in paragraphs 103-105 of" the Complaint. Doc. 11, Def.'s Reply 2. In relevant part, these allegations claim that "Unate willfully detained Mr. Moreno without his consent and without legal authority or justification," causing Moreno to be "damaged thereby." Compl. ¶ 104, 105.

Before addressing Defendants' Rule 12(b)(6) Motion, the Court begins with a brief discussion of the applicable legal standard here. The dispositive question in reviewing a Rule 12(b)(6) motion is whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556. In determining whether a claim is plausible, courts "must accept [all] well-pleaded facts" as true. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). Likewise, well-pleaded facts must be "construed . . . in the light most favorable to the plaintiffs." *Kopp v. Klien*, 722 F.3d 327, 333 (5th Cir. 2013). However, courts need "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin*, 407 F.3d at 696 (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

Defendants move for dismissal of Moreno's FTCA "false imprisonment" claim, for which they believe "Moreno has failed to plead facts showing that [Unate] violated the law."[2] Doc. 8, Def.'s Mot. 4. Specifically, they point out that "[w]hile Moreno alleges that the agent asked about his immigration and citizenship status, Moreno fails to plead facts specifying his response or his immigration status." *Id.* This is fatal to his claim, Defendants argue, because Moreno's *arrest* would have been lawful under 8 U.S.C. § 1357(a), "[i]f Moreno had told the agents the he lacked documentation showing an authorized status or that he was in the United States illegally." *Id.*

Moreno responds that his false imprisonment allegations concern only Unate's alleged *stop* of his vehicle without reasonable suspicion. Doc. 9, Pl.'s Resp. 8. Defendants do not challenge these allegations, according to Moreno; instead, they "exclusively challeng[e] a claim that Mr. Moreno has

---

[2] To establish a false imprisonment claim under Texas law, as Moreno must do here, the plaintiff must demonstrate "(1) wilful detention; (2) without consent; and (3) without authority of law." *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985).

not brought—Mr. Moreno brings no false imprisonment claim . . . arising from the arrest." *Id.* at 9. For these reasons, he argues, Defendants' Rule 12(b)(6) Motion should be denied. The Court agrees.

This dispute can be quickly resolved by discussing an on-point case, previously decided by this Court, that the Defendants cite in support of dismissal. *See* Def.'s Mot. 4 (citing *Frias v. Torrez*, No. 3:12-CV-1296-B, 2013 WL 460076, at *7 (N.D. Tex. Feb. 6, 2013)). In that case, *Frias v. Torrez*, the plaintiff, "Frias," brought a similar set of claims against the United States and a U.S. Customs and Border Protection agent, "Torrez," alleging an unlawful stop *and* arrest based solely on Frias' Hispanic ethnicity. Like in this case, one of Frias' causes of action was an FTCA claim for "false imprisonment." While the Court partially dismissed Frias' claim pursuant to Rule 12(b)(6), it did so only to the extent the claim was "based on his arrest." *Id.* It explained that dismissal was warranted in this regard, because "Frias failed to demonstrate that Torrez's action in handcuffing him before asking him about his immigration status was unreasonable or that it even constituted an arrest requiring probable cause at that point in time." *Frias*, 2013 WL 460076, at *7 (citing *United States v. Jordan*, 232 F.3d 447, 450 (5th Cir. 2000)).

The Court in *Frias*, however, declined to dismiss Frias' false imprisonment claim insofar as it was based on allegations that Torrez "stopped [Frias'] vehicle without reasonable suspicion or probable cause." *Id.* Addressing the "without authority of law" false-imprisonment element—which Defendants, likewise, challenge in this case—the Court explained:

> On the alleged facts taken as true, Frias was abiding by all pertinent traffic laws while driving and was pulled over by Torrez solely based upon his Hispanic appearance. As pled, these facts demonstrate that Torrez stopped Frias without reasonable suspicion or probable cause. Therefore, Frias has adequately alleged that the stop was outside the authority of the law.

*Id.*

Moreno's allegations in this case are substantively the same as the unlawful stop allegations that the Court found plausible in *Frias*. Indeed, his Complaint goes into painstaking detail as to why Unate allegedly lacked reasonable suspicion or probable cause in pulling over Moreno on December 12, 2012, including the lack of suspicion in regards to Moreno's appearance and behavior, his vehicle, and the area he was driving in, and the fact that Moreno was driving at a normal rate of speed and in accordance with all applicable laws. *See* Compl. ¶¶ 21-69. Like in *Frias*, these allegations plausibly show that Moreno "was pulled over by [Unate] solely based upon his Hispanic appearance," and thus, "without reasonable suspicion or probable cause," rendering the seizure/imprisonment "outside the authority of the law." *Frias*, 2013 WL 460076, at *7. And unlike in *Frias*, Moreno makes clear that his false imprisonment claim is *not* "based on his arrest." *Id.*; *see* Doc. 9, Pl.'s Resp. 9. Since this is the only grounds on which Defendants move for dismissal, and they do not even challenge the allegations concerning the stop, their Motion to Partially Dismiss is hereby **DENIED**.

## II.

## THE MOTION TO TRANSFER VENUE

Defendants also move for a transfer of venues "to the San Angelo Division of the Northern District of Texas." Def.'s Mot. 1. As Defendants correctly point out, venue for the FTCA claims brought against the United States is governed by 28 U.S.C. § 1402(b),[3] whereas 28 U.S.C. § 1391(e)(1) controls venue with respect to the claim against Unate.[4] *See id.* at 5. And it is undisputed

---

[3] *See* 28 U.S.C. § 1402(b) ("Any civil action on a tort claim against the United States under subsection (b) of section 1346 of this title may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred.").

[4] 28 U.S.C. § 1391(e)(1) ("A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial

that this District is where the plaintiff, Moreno, resides and where the events giving rise to his claims occurred, making venue proper in this District under both § 1402(b) and § 1391(e)(1). But while venue may be proper in this District, the question remains whether to grant Defendants' request to transfer this case "to a different division within the district"—i.e., San Angelo—pursuant to 28 U.S.C. § 1404(a).[5]

Under § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). A decision to transfer venues pursuant to § 1404(a) is made with reference to a number of judicially-developed factors, which "apply as much to transfers between divisions of the same district as to transfers from one district to another." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013). These factors include:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive; (5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

*Id.* (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc)) (quotation marks and alterations omitted). Importantly, these factors must be weighed in such a way that

---

district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.").

[5] In the front of their Motion, Defendants actually cite 28 U.S.C. § 1404(b) in support of their transfer request. *See* Def.'s Mot. 1. However, as Moreno points out, § 1404(b) applies to transfer requests made "[u]pon motion, consent, or stipulation of *all parties*," 28 U.S.C. § 1404(b), and not "all parties" consent to this transfer. Therefore, § 1404(a), which Defendants appear to advocate for anyhow, applies here.

"reflect[s] the appropriate deference to which the plaintiff's choice of venue is entitled." *Volkswagen*, 545 F.3d at 315. Therefore, the burden rests with the defendant to show "'that the transferee venue is clearly more convenient'" when considered in light of the above factors. *Radmax*, 720 F.3d at 288 (quoting *Volkswagen*, 545 F.3d at 315).

In an effort to satisfy this burden, Defendants point out that the Complaint "recites a litany of acts allegedly committed by the United States and Defendant Unate—all occurring in the Ozona, Texas, area," which "is located in the San Angelo Division of the Northern District [of Texas]." Def.'s Mot. 6-7. Defendants further note that Moreno "at the time [of the events in question] was residing in Ozona, Texas." *Id.* at 7. They also highlight that counsel for the defense is based in the San Angelo Division. *Id.* In addition, "all records and defense witnesses are located in the San Angelo Division" according to the Defendants. Def.'s Reply 3. These facts show the inconveniences of this forum, Defendants argue, especially since Ozona, Texas is "300 miles" away from this Division. Def.'s Mot. 7. Accordingly, Defendants assert that "[t]he convenience of the parties and witnesses as well as the interests of justice would be served by transferring this case from the Dallas Division to the San Angelo Division." *Id.*

Moreno responds by disputing Defendants' assertions and arguing that they have failed to meet their burden. His response begins by asserting that at least two of the relevant witnesses in this case—Moreno and his companion in the vehicle at the time of the stop, Flaudio Colmenero Gomez ("Colmenero")—reside in or near the Dallas Division. Pl.'s Resp. 22. Likewise, Moreno's "counsel resides and works in San Antonio."[6] *Id.* And while counsel and other interested persons have "easy

---

[6] Defendants contend that even though "Plaintiff's counsel argue that it is difficult to get to San Angelo, . . . his office maintains an office in San Angelo, according to counsel's website." Def.'s Reply 3.

and quick access by plane to Dallas, . . . [t]here is no easy and quick access to San Angelo," which is not served by any commercial airlines. *Id.* at 22-23. In short, Moreno contends that "[t]he only result achieved by transferring venue to San Angelo is that it will increase the cost of bringing this type of civil rights cases thereby reducing the likelihood that persons so aggrieved will have access to the courts to seek redress." *Id.* at 23. As such, he concludes that Defendants have "failed to demonstrate that the convenience of the parties or the interest of justice favor a change of venue and its motion should be denied." *Id.* Based on its review of the § 1404(a) factors below, the Court agrees.

First, two of the factors, the first and the sixth, admittedly weigh in favor of transfer based on the Complaint's allegations that the unlawful conduct in this case took place in the San Angelo Division. For the first factor, "the relative ease of access to sources of proof" favors San Angelo, since there appears to be no dispute that "[a]ll of the documents and physical evidence relating to the" alleged traffic stop are located there. *Volkswagen*, 545 F.3d at 316. Similarly, the sixth factor, which looks at the local interests in each respective venue, favors San Angelo Division, since this is where the alleged stop and racial profiling took place. *See Radmax*, 720 F.3d at 289.

Second, four of the factors are neutral given the lack of any facts distinguishing this forum from San Angelo in terms of the respective powers and capabilities of each to fairly and efficiently try this dispute. In other words, there is no evidence that the two divisions differ with respect to "the availability of compulsory process to secure the attendance of witnesses," "administrative difficulties flowing from court congestion," or "the familiarity of . . . the law that will govern the case." *Id.* at 288.

---

Counsel, however, clarifies in his Motion to Waive the Requirement of Local Counsel that no attorney with his firm is "physically assigned on a permanent basis to the San Angelo office. Legal services are provided to the local community by a lawyer [with his firm] who visits monthly and works in conjunction with the law office of" another firm located in San Angelo. Pl.'s Mot. Waive L. Counsel 3 n.1.

Likewise, there are no "problems of conflict of laws or in the application of foreign law" unique to either forum. *Id.* Therefore, the Court finds the second, fifth, seventh, and eighth § 1404(a) factors to weigh neutrally in the forum-transfer balance.

Third, the two remaining § 1404(a) factors, the third and the fourth, weigh against transferring this case to San Angelo. In regards to the third factor, "the cost of attendance for willing witnesses" favors keeping this case in the Dallas Division. While Defendants vaguely assert that "all . . . defense witnesses are located in the San Angelo Division," Def.'s Reply 3, they offer no insight into who those witnesses may be or the costs associated with their attendance. In contrast, Moreno specifically represents that "only three known persons [are] directly relevant to this case," two of which reside either in Dallas (Colmenero) or nearby in Fort Worth (Moreno), and none of whom appear to reside in San Angelo.[7] Pl.'s Resp. 22. On balance, the Court finds Moreno's more specific and persuasive showing here to tip this factor in his favor.[8] For similar reasons, the fourth factor, which addresses "all other practical problems that make trial of a case easy, expeditious and inexpensive," also weighs against transfer. To the extent any persons who must be present at trial do not reside within either of the divisions at issue, such as counsel for the plaintiff, Moreno shows that

---

[7] It is not entirely clear where Unate resides. Defendants never mention Unate's residence in their opening brief, while Moreno represents in his response that Unate "is believed to live in Del Rio and to work out of the Comstock CBP substation, located just north of Del Rio." Pl.'s Resp. 22. Rather than respond directly to this assertion in their reply, Defendants merely state that "Defendant Mario Unate is in the San Angelo Division." Def.'s Reply 3. Given that it is Defendants' burden here, the Court rejects this vague assertion as establishing Unate's residence in the transferee division of San Angelo.

[8] *See Smith's Consumer Products, Inc. v. Fortune Products, Inc.*, No. 3:14-CV-00627-K, 2015 WL 1037419, at *3 (N.D. Tex. Mar. 9, 2015) (quoting *U.S. Ethernet Innovations, LLC v. Samsung Electronics Co.*, No. 6:12-CV-398 MHS-JDL, 2013 WL 1363613, at *3 (E.D. Tex. Apr. 2, 2013)) ("'The [c]ourt gives more weight to those specifically identified witnesses and affords less weight to, vague assertions that witnesses are likely located in a particular forum.'").

Dallas poses less practical problems because of its access to commercial transportation, in contrast to the San Angelo Division, which is not serviced by any commercial airline. *See id.* Since Defendants offer nothing in rebuttal on this factor, the Court finds it also weighs against transfer.

To summarize, the Court finds two factors weigh in favor of transfer, two weigh against it, and four are neutral. Balancing these results under the § 1404(a) rubric, the Court concludes that Defendants have not met their burden of showing "'that the transferee venue is clearly more convenient.'" *Radmax*, 720 F.3d at 288 (quoting *Volkswagen*, 545 F.3d at 315). While the events in this case took place in the San Angelo Division, they involved a straightforward incident that will most likely turn on the testimony of three key witnesses—none of whom resides in or near that Division. Moreover, transferring this case would impose costs on at least two of these key witnesses, and potentially deter the plaintiff from continuing to pursue his civil rights claims. This is an especially significant consideration in this case, because San Angelo and Dallas are more than 100 miles apart. Under such circumstances, the Fifth Circuit's 100-mile rule dictates that the costs to witnesses factor carries "greater significance" in the § 1404(a) analysis. *Radmax*, 720 F.3d at 289. And ultimately, given Defendants' minimal efforts to show that the circumstances of this case "clearly" favor San Angelo, the Court must give deference to Moreno's choice of forum. *Volkswagen*, 545 F.3d at 315. As such, the Court **DENIES** Defendants' Motion to Transfer Venue.

## III.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the Defendants' Motion (doc. 8) on all grounds. In light of its ruling, the Court can now address the Motion to Waive Local Counsel Requirement (doc. 5) filed by Moreno's counsel, which is hereby **GRANTED**. Notwithstanding its

decision to grant a waiver at this time, the Court reserves the authority to re-instate the local counsel requirement for Moreno's counsel, without prior notice or counsel's input, if the need should arise or if the Court otherwise finds good cause for doing so.

**SO ORDERED.**

DATED: April 7, 2015.

                                        _____
                                        JANE J. BOYLE
                                        UNITED STATES DISTRICT JUDGE